We are now going to move to appeal 22-1446 Singh v. Garland and Mr. Dungana will begin with oral argument from you. Good morning, Your Honours, and may it please the Court. Good morning. I am Rajan Dungana on behalf of Petitioner Manpreet Singh. Your Honour, I believe this case deserves a remand to the Lower Immigration Court for the following reasons. I believe that the finding of past persecution was erroneous in a way that would compel Your Honours to see that it was erroneous. I think it is important to distinguish that the petitioner here was found credible, so his own testimony in the record would be taken at face value for his credibility. In addition, Your Honour, should Your Honour disagree with the past persecution analysis I present, I believe that the internal relocation analysis was not sufficiently fleshed out or incorrectly fleshed out.  I believe that based on his own credible testimony, the petitioner Mr. Singh joined the Man Party while he was still underage, while he was 17. Age is a factor here for the internal relocation reason. He recently turned 18 when he began to suffer persecution at the hands of the other parties. And the key scene here, Your Honour, is that he was beaten to the point of unconsciousness, where he was unconscious. And then on another occasion when he was beaten again, there was a specific threat made that next time you will be killed. That's in the admin record 106 and repeated again when the IJ asked him again about it on page 126, he repeats the same threat. This court has previously ruled that in Sakai v. Gonzalez that threats, if accompanied by other incidents of severe violence, would be persecution. And this court has also stated in Stanoikova that a significant physical force would also be relevant in the past persecution analysis. Did he suffer a significant force of violence? The fact that he was rendered unconscious is a significant event, Your Honour. Those two coupled together makes the argument that for Sakai, he had the severe form of violence and he had the accompanying threat of future violence, which meets the burden of past persecution, Your Honour. If there are no questions on the past persecution, Your Honour, I move on to the internal relocation. Just one question with regard to that. Our court recently decided a case, last name Singh v. Garland, 89F4602. Are you familiar with that authority and if you are, is it distinguishable from this case? Yes, Your Honour, I am familiar with the authority. It's very much distinguishable. First of all, that other particular Singh individual was not found credible. And also, even if you were to accept that he was credible, the harm that he claimed he suffered was not the same. He had some beatings, he had some broken teeth, but he never lost consciousness. I'm countering that the loss of consciousness is a severe form of violence where other assistant courts have also seen it before. In addition, Your Honour, in that particular case, there were some evidentiary issues where petitioner's counsel did not present medical evidence and so on and so forth that also impacted his credibility. At the very least, if the consciousness issue is an issue, the petitioner here did not have the ability to present any evidence of trauma. It wasn't asked in the record as well. That record could have been developed a little further as well. Regardless, even if that record wasn't developed and that was sufficient for the judge to find him credible, that alone is enough, Your Honour. If there are no further questions. We may move to the next one, yes. For the interim relocation piece, Your Honour, the record shows what this 18-year-old individual, just turned 18, did to try to relocate. He went to Ida's auntie's house. That's 118 on the record, Your Honour. And when asked what did he do, who arranged for this, everything was arranged by someone else. What did you do while you were hiding? I was offering prayers. That is the extent of his knowledge of what he can do to hide, to relocate from his persecutors. That's in the record, Your Honour. And also, once that burden shifted, once the judge found that there was no past persecution and it shifted to him, the manner of the judicial notice, Your Honour, granted, the IJ took judicial notice after redirect was over in the transcript, where the DHS counsel proffered, Judge, can we take judicial notice of the Human Rights Report and the International Freedom Report? Which the judge countered saying, yes, the Seventh Circuit allows me to do that. Okay. It would have been better to have proffered it at the top versus after redirect was over. Now that the burden has shifted to the petitioner, he has to have an opportunity to present evidence to counter that presumption of internal relocation, which was just now introduced into the record, after direct testimony, after cross-examination, after redirect. Be that as it may, we also believe that the IJ did not properly consider all the factors 8 CFR 208.13.b.3. Some of those are ongoing civil strife, his age, his social and cultural context, health, family ties, and other geographical limitations. Here, he had just turned 18. He was a minor when his activities began. He started getting beaten up once he turned 18. Yes, that is the Asian majority in India. He would have been a technical adult. But his own evidence of what he did in order to hide, and also the evidence of what did he do when he left India. He says, my father arrived in Delhi. He gave me a password. I went to Ecuador. I don't know. Somebody would show me my photo, and I went there. That shows his knowledge and his ability to go somewhere else within India. And in addition, Your Honor, something that no court has addressed before. This respondent has joined the party because one of the reasons he states is because they advocate for an independent homeland within India. I contend that it would not be reasonable for somebody to relocate somewhere else when his entire political goal is to remain there and have an independent homeland. It would not have been reasonable for a founding father to say, I want Virginia to be free of the crown in England to go relocate to Scotland. He wants to be in Virginia. That's the whole point of his political dissent, Your Honor. Thank you, Mr. Dugan. Would you like to reserve the remainder of your time for rebuttal? Yes, thank you. Very good. Thank you. We'll now hear Ms. Roberts from you. Good morning, Your Honors. May it please the court. Roberta Roberts on behalf of the Attorney General of the United States of America. There are several grounds on which to deny this petition. And one of these grounds is dispositive for denying all three of the requested forms of relief, and that is the internal relocation issue. Substantial evidence supports the agency's finding that Mr. Singh did not meet his burden to prove that he could not reasonably relocate within India to avoid harm. And record evidence does not compel reversal of the agency's findings. First, petitioners claim that the government wants to eliminate Sikhs and that the Indian government won't let Sikhs live anywhere else is unfounded. This is found at AR-127 when Mr. Singh testified to that being the reason that he could not internally relocate within India. However, the most recent country conditions evidence in the record states that Indian law provides a right to movement, and the Indian government respects that right. The Indian constitution reserves seats in parliament for Sikhs to ensure Sikh representation, and the Indian government has recognized Sikhs as a protected minority community. In addition, the country conditions reports make no mention about any violence against Sikhs or man party members. Now, for the first time before this court, Mr. Singh raises an issue with the immigration judges taking administrative notice of the country conditions report. First, this argument is unexhausted because it was not raised to the board, and therefore the court should not consider this argument. Also, this argument is waived because it was not raised in the opening brief. So that is another reason why the court should not consider this argument. But even if the court did consider this argument, it would fail on the merits because the IJ taking administrative notice of the most recent country conditions reports was in fact proper. For example, the reports that petitioners submitted were more than 15 years old at the time of the hearing. The most recent report authored by the U.S. Department of State was the 2018 Human Rights Report, then also the International Religious Freedom Report for India. Those are the reports that the immigration judge took administrative notice of. And actually, petitioner did have an opportunity to object to that administrative notice, but did not take an opportunity to do so. So here in the record, DHS asks the IJ to take notice of these reports. I'm at AR 128. And then at AR 129, the IJ notes that the Seventh Circuit allows them to take notice of these reports. And the judge specifically asks counsel for both parties anything else other than closing. And Mr. Singh's counsel stated nothing further. DHS, in their closing argument, highlighted the specific things from the Human Rights Report and the Religious Freedom Report that were administratively noticed that DHS was relying on in those reports. This hearing, where the closing argument was given, was on May 30, 2019. And the immigration judge's decision was not rendered immediately after the hearing. It was not issued until several days later on June 4, 2019. So Mr. Singh had opportunity to raise any issues that he may have had with this country conditions report. In addition, the IJ decision was issued in 2019. The Board of Immigration Appeals did not issue its decision until February of 2022. So there were several years that petitioner could have raised this argument in a form of a motion to reopen or reconsider or something else instead of raising it for the very first time just a few minutes ago. Moving on to the issues of past persecution, the threat here was not the required credible, menacing, and imminent threat that would be enough to be considered as persecution. Here, a petitioner testified that he heard the threat as he was running away. It is unclear even if he was close to the alleged attackers when he heard this threat. It is possible that he was several yards away at a safe distance and happened to overhear this threat. It is not one such as in the case NLA where the petitioner there when they received a threat two months before the petitioner's uncle was murdered. A month before, a month after that, the petitioner's father was kidnapped and the threat was relayed through the petitioner's kidnapped father. There is a circumstance where the threat is credible and it's done in a menacing manner and the threat is imminent. Moving on to the issue of loss of consciousness, while this could be considered a substantial harm in another case, it is not under these circumstances. There are actually several cases where this court has found that a loss of consciousness is not enough to rise to the level of past persecution. For example, in Oriana Arias v. Sessions, the court writes a parenthetical citing to Mima v. Gonzalez stating that abduction at gunpoint followed by detention and physical abuse resulting in petitioner losing consciousness did not compel conclusion that petitioner suffered past persecution. And the court said that in that case. And there is another case in this Singh v. Garland, the 2024 case that was discussed earlier. The court in that same case cites to Tuchman v. Garland. And there in that case, this court found that the petitioner being beaten, losing consciousness, suffering a broken nose and having to spend three weeks in the hospital did not rise to the level of past persecution. And here in this case, we do not have harm that is as severe as even the harm mentioned in Mima or Tuchman. There was no abduction at gunpoint. There was no detention that followed after this beating. There were no broken bones. There was no extensive hospitalization required. There is a case where the Seventh Circuit has found that losing consciousness rose to the level of persecution. And that was in the Serbu case. However, that case differs from this case here because in that Serbu case, the petitioner suffered a concussion and had to receive treatment for the concussion at a medical facility. Here in this case, Mr. Singh did not testify to having to receive medical treatment for losing consciousness. There are several levels of losing consciousness. It could be that maybe someone has low blood sugar levels or dehydration or maybe it was just a momentary blackout, as opposed to losing consciousness to the extent that they have a concussion and they require hospitalization and medical treatment, which is not the case here. Petitioner's counsel mentioned about the record being undeveloped. However, the burden was on the petitioner to provide specific details of his losing consciousness. If petitioner wanted to advance that he suffered head trauma and the like, he should have presented that during the hearing, and he did not. So he did not meet his burden to demonstrate that the harm that he experienced rose to the requisite level of past persecution. Also, the immigration judge did consider all of the relevant factors required to make the internal relocation analysis. At AR-74, the immigration judge specifically lists all of the factors that petitioner claims the immigration judge did not consider. This court has said that the agency does not have to write an exegesis on every contention. The immigration judge provided analysis on the most probative factors, as I mentioned before, about how the most recent country conditions evidence showed that Indian law allows for freedom of movement, that the Indian government respects this right to freedom of movement. The Indian constitution reserves seats in parliament for Sikh representation. In addition, the Indian government has also designated Sikhs as a protected minority community for additional government assistance. And with what was said today and in the submitted brief, Your Honor, the respondent would request that you deny the petition. Thank you, Your Honor. Thank you, Ms. Roberts. Mr. Duggana, we'll go back to you now for rebuttal argument. Thank you, Your Honor. Your Honor, this court has allowed to take judicial notice of the most recent human rights report that's published by the Department of State. And we ask that you take judicial notice of the 2023 report that just came out. I don't know the exact date, but I believe it was the end of April, Your Honor. In that report, everything that opposing counsel said is untrue, as of today, Your Honor. As of today, extrajudicial killings by the Indian government occur. They murdered a Sikh activist in the territory of Canada. This is in the report. The report shows ongoing civil strife in multiple parts of India unrelated to the Punjabi, the Sikh movement. While judicial notice was also taken of the human rights report and the religious freedom report, the judge spent significant time asking about his religion, Sikh religion, but does not use any of the analysis from the freedom report in his analysis, despite taking judicial notice of that as well, Your Honor. In addition, while there is some speculation as to maybe, there are multiple ways you can be unconscious. Were you choked? Were you beaten on the head? True. That's all speculation. And that is something that can be addressed at the fact-finding level with a remand, Your Honor, if that's the case. If it's an issue of is it clear what kind of trauma it was, okay, that record can be developed, Your Honor. And there are just too many maybes on that issue on the record, Your Honor. With the internal relocation, Your Honor, as of today, the internal relocation argument changes because of the current report of what the country of India is like today, Your Honor. And for that reason, we believe that a remand may be in order so that an IJ can properly analyze the new internal relocation situation and perhaps analyze the past persecution. Thank you, Your Honor. Thank you, Mr. Dungana. Thank you, Ms. Roberts. The case will take it under advisement.